In re ROSENTHAL.

(Supreme Court, Appellate Division, First Department. July 13, 1909.)

1. AUCTIONS AND AUCTIONEERS (§ 4*)—REVOCATION OF LICENSE—EVIDENCE OF FRAUD.

Evidence *held* insufficient to show that the person complaining had been defrauded by an auctioneer within Greater New York Charter (Laws 1897, p. 13, c. 378) § 34, as amended by Laws 1907, p, 941, c. 431, providing that "the president of the board of aldermen on complaint of any person having been defrauded by any auctioneer * * * is authorized and directed to take testimony under oath relating thereto, and if the charge shall, in his opinion, be sustained, he shall revoke the license granted to such auctioneer."

[Ed. Note.—For other cases, see Auctions and Auctioneers, Dec. Dig. § 4.*]

2. CERTIORARI (§ 42*)—APPLICATION—SUFFICIENCY.

The application for a writ of certiorari to review the action of president of the board of aldermen in revoking the license of an auctioneer under Greater New York Charter (Laws 1897, p. 13, c. 378) § 34, as amended by Laws 1907, p. 941, c. 431, need not present in full the evidence taken on the hearing; enough evidence to present a prima facie case being sufficient.

[Ed. Note.—For other cases, see Certiorari, Dec. Dig. § 42.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

118 N.Y.S.—16

Appeal from Special Term, New York County.

Application of James M. Rosenthal for a writ of certiorari to review the action of the president of the Board of Aldermen of the City of New York in canceling petitioner's license as auctioneer. From an order denying the application, petitioner appeals. Reversed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Philip Cohen, for petitioner.

Theodore Connoly (Clarence L. Barber, on the brief), for respondents.

LAUGHLIN, J. Pursuant to the provisions of section 34 of the Greater New York charter (Laws 1897, p. 13, c. 378), as amended by chapter 431, p. 941, Laws 1907, which became of force on the 15th day of June of that year, the city clerk of greater New York, on the 15th day of June, 1908, duly granted a license to the petitioner to carry on the business and occupation of auctioneer. The petitioner complied with the conditions precedent to exercising such right by paying the fee and filing the bond required by the statute. Said section 34 makes it unlawful to carry on the business of an auctioneer without obtaining such a license, and it prohibits the issuance of a license to one whose license "has been revoked for cause," and further provides as follows:

"The president of the board of aldermen on complaint of any person having been defrauded by any auctioneer, or by the clerk, agent or assignee of such auctioneer, doing business in said city, is authorized and directed to take testimony under oath relating thereto; and if the charge shall, in his opinion, be sustained, he shall revoke the license granted to such auctioneer, and direct his bonds to be forfeited."

The president of the board of aldermen, after a hearing upon charges, has revoked the license of the petitioner, and has so notified the city clerk, who has certified the decision to the petitioner. The principal contention of the petitioner is that the facts proved on the hearing did not warrant the revocation of the license. The application for the writ was made on notice to the respondent.

The petitioner shows that on the 26th day of March, 1909, the president of the board of aldermen gave notice to the petitioner in writing that the hearing in the matter of the complaint of one Thompson against him in his capacity as auctioneer, which was set for the 1st of April, would be heard on the 31st day of March instead; that he appeared with counsel, and an affidavit made by Thompson verified on the 24th day of March, 1909, a copy of which is annexed to the petition, was read. This affidavit charged that on the 4th day of February, 1909, the affiant sold to the firm of Fisher & Leitner, of No. 736 Tenth avenue, borough of Manhattan, New York, a bill of goods amounting to $52.50, and on February 11, 1909, another bill of goods amounting to $32.24; that on the 16th day of the same month he was informed that the store of the purchasers was closed, and he visited the premises two days later, and found that the petitioner was there, and was, as auctioneer, about to sell the stock of goods at public auc-

tion; that he notified the petitioner that the firm of Fisher & Leitner was indebted to him in the sum of $84.39; and that, notwithstanding this, the petitioner proceeded to dispose of the entire stock of goods at public auction. And, without stating any other fact having material bearing on the question, the affiant drew the inference, and further stated in his affidavit as follows:

"I am satisfied that there was collusion upon the part of the above-named auctioneer and the firm of Messrs. Fisher & Leitner to defraud me."

The petition shows that the petitioner stated on the hearing that he was employed by one Abraham Lebovsky as an auctioneer to sell the goods, and that he merely did as he was directed by his employer, who was in charge of the store and of the goods. He concedes—a fact not otherwise proved against him—that Thompson forbade the sale of the goods upon the ground that they did not belong to Lebovsky. It further appeared by the testimony of Lebovsky that the latter purchased the stock of goods on the 13th of February, 1909, for the sum of $550, of the firm of Fisher & Leitner; that his attention was drawn to the stock of goods by an advertisement and by one Goldberg; that he had taken a bill of sale of the goods and a receipt from Fisher & Leitner, which he had lost; and that this was the first time that he had ever purchased or sold a grocery store. Upon these facts, the respondent made a determination to the effect that the charge of fraud was sustained, and he thereupon revoked the license and directed the city clerk to make a record of such revocation.

The evidence was wholly insufficient to sustain the charge that the petitioner in selling this stock of goods intended to defraud Thompson or any other person. Thompson furnished no evidence that Lebovsky, who was in charge of the store and the goods, was not authorized to dispose of them. The petitioner would not have been justified in refraining from proceeding with the sale on Thompson's mere assertion that the firm of Fisher & Leitner had purchased the goods from him and had not paid for them, and that the petitioner's employer had no right to sell them. That did not constitute proof of those facts, and such proof was not offered. If those facts were true, the law afforded Thompson a remedy. If any fraud was perpetrated upon him in obtaining his goods, he could have replevied them as against every one except a bona fide purchaser, and could probably have enjoined a sale of them pending an action. He did not even offer to indemnify the petitioner against any loss that he might sustain in acting upon the suggestion made to stop the sale, rather than following the directions of the man who employed him. Informalities and irregularities of procedure with respect to a proceeding of this nature before an executive or an administrative officer may and should be disregarded; but the Legislature clearly limited the authority of the president of the board of aldermen to revoke the license of an auctioneer to a complaint by a person who has been defrauded by the auctioneer personally or by the clerk, agent, or assignee of the auctioneer; and a revocation of the license is only authorized where, by testimony under oath, on a hearing duly had on notice to the licensee, the charge is fairly sustained. We have not overlooked the fact that the statute expressly au-

thorizes the revocation of the license if in the opinion of the president of the board of aldermen the testimony sustains the charge; but we are unable to agree with the claim made in behalf of the respondent that this shows that the Legislature intended to vest a discretion in the president of the board of aldermen which is not reviewable by the courts. The argument in support of that theory is answered by the act of the Legislature, which limits the revocation of the license to a single ground relating to the conduct of the business by the licensee, and to a dishonest act on his part. It is not reasonable to infer that, after thus limiting the power of removal, the Legislature intended to foreclose a review of the determination of the president of the board of aldermen by which the licensee would be deprived for an indefinite period of time, if not forever, of the right to follow the trade and calling for which he deemed himself specially fitted, and which he had followed to some extent at least. If there were any evidence tending to show that the petitioner was guilty of fraud in conducting the business of an auctioneer, or in acting as an auctioneer, then significance might well be given to the phrase in the act in question, and the court might properly refrain from reviewing the weight of the evidence. There must, however, not only be a charge of fraud, but some competent evidence tending legitimately to sustain it in order to give the president of the board of aldermen jurisdiction to annul the license. In the case at bar it now appears that such evidence was wanting. The learned justice who presided at Special Term expressed the view that the petitioner has not presented in full the evidence taken on the hearing or sufficiently excused his failure so to do. We are of opinion that that was unnecessary on the motion for the writ. He was only called upon to make out a prima facie case to the effect that he was removed upon an insufficient charge, or upon a proper charge, but without evidence to sustain it, and then the court should direct that the writ issue to the end that the true record be certified and returned, upon which alone the final adjudication must be based; and in this regard we deem the moving papers sufficient, and they are not overcome by the opposing affidavit.

It follows that the order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur.